USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 2/11/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATSY COMUNALE, *individually and as the Administrator of the Estate of Joseph A. Comunale*<br><br>       **Plaintiff,**<br><br>  -against-<br><br>GORDON GEMMA and SUZANNE DILIONE<br><br>       **Defendants** | 18-CV-12104 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., District Judge:**

  Plaintiff, Patsy Comunale, individually and as Administrator of the Estate of Joseph A. Comunale, brings this action against Defendants Gordon N. Gemma ("Defendant Gemma") and Suzanne M. Dilione ("Defendant Dilione") (collectively, "Defendants") for violating Plaintiff's right of sepulcher—i.e., the next of kin's right to immediately possess the remains of a decedent's body. Defendants filed motions to dismiss. Since Plaintiff does not establish that either general or specific personal jurisdiction exists over the Defendants, her claims must be dismissed pursuant to Rule 12(b)(2). Even if Plaintiff were to establish personal jurisdiction, the choice-of-law provisions of New York counsel in favor of applying New Jersey tort law, and the right of sepulcher does not exist in New Jersey. Thus, the claims must also be dismissed pursuant to Rule 12(b)(6). Accordingly, Defendants' motions to dismiss are **GRANTED**.[1]

---

[1] Defendant Gemma filed a notice of removal in the present case, whereas Defendant Dilione filed a notice of removal in a related case *Comunale v. Gemma et. al.*, No. 18-CV-12104 (S.D.N.Y. 2019). Both Defendants have entered a notice of appearance and filed motions to dismiss on the present docket. Accordingly, the Clerk of the Court is respectfully directed to close both this docket (No. 18-CV-12104) and the related case (No. 18-CV-12246).

## BACKGROUND

The following facts are taken from allegations contained in Plaintiff's Amended Complaint and are presumed to be true for purposes of this motion.

Joseph Anthony Comunale ("Joey") was brutally murdered on Sunday, November 13, 2016 by James Rackover ("James"), Lawrence Dilione ("Larry"), and Max Gemma ("Max"). Amended Complaint (ECF No. 42) at 1. James Rackover was prosecuted and convicted of one count of Murder in the Second Degree, two counts of Hindering Prosecution in the First Degree, and Concealment of a Human Corpse; Lawrence Dilione pled guilty to Manslaughter in the First Degree; and Max Gemma pled guilty to Hindering Prosecution in the First Degree. *Id.* at 4–5. Plaintiff Patsy Comunale is the mother of Joseph Comunale. Defendant Suzanne Dilione is the mother of Lawrence Dilione, and Defendant Gordon Gemma is the father of Max Gemma.

Mr. Comunale was murdered in James Rackover's apartment in the early morning hours of November 13, 2016 in New York, New York. *Id.* at 9. After murdering Mr. Comunale, James and Larry attempted to dispose of the body by dismembering, burning, and discarding it in a shallow grave in Oceanport, New Jersey. *Id.* at 10. Max left James' apartment before the body was transferred from New York to Oceanport, New Jersey and traveled to the apartment he shared with Larry in Jersey City, New Jersey. *Id.* However, during the time the body was transported and disposed of by Larry and James, they were in constant phone contact with Max. *Id.*

While Defendants Gemma and Dilione had no knowledge of the murder as it occurred, "[w]ithin hours of Max's return to Jersey City, New Jersey, Max informed his father, Defendant Gemma, of his and Larry's involvement in, *inter alia*, Joey's murder and disappearance. Similarly, Larry informed his mother, Defendant Dilione of their (Larry and Max's) involvement." *Id.* at 11. Both Defendants decided to "actively participate in the cover-up of this horrific crime by

2

conspiring and agreeing to intentionally and knowingly lie to members of law enforcement to prevent the detection and recovery of evidence material and relevant to the investigation of Joey's disappearance and murder." *Id.* Defendants Dilione and Gemma conspired to cover up the murder by agreeing to lie to the police and Joey's family as to the knowledge of Joey's whereabouts, by convincing their sons that they needed to concoct an alibi that would minimize their criminal exposure, and by instructing their children to lie to the police for the purpose of impeding the police investigation into the murder. *Id* at 10–15.

To establish jurisdiction over the Defendants, Plaintiff alleges that Defendant Gemma "regularly and systematically conducts business within the State of New York," including consulting work for a "12-story residential condo development in Park Slope, Brooklyn." *Id.* at 6–7. Additionally, Plaintiff alleges that Defendant Gemma "was and is his son's co-counsel in an action that is currently pending in New York State Supreme Court for New York County." *Id.* at 8. However, as demonstrated through sworn testimony and exhibits, Defendant Gemma is not the owner of the property, he has no New York office, no New York employees, and no New York bank account. Memorandum of Law in Support of Defendant Gordon Gemma's Motion to Dismiss (ECF No. 50) (Def. Gemma Memo) at 5. Additionally, Defendant Gemma is not the counsel of record and does not represent his son in any civil action pending in New York. *Id.* at 5–6.

As to Defendant Dilione, Plaintiff alleges that "both Defendants Gemma and Dilione participated in a cover-up of this horrendous crime by voluntarily meeting with and lying to the NYPD, who were investigating a crime that occurred in New York City." *Id.* at 9. There are no allegations, however, that Defendant Dilione had any other contacts—either personally or professionally—to the State of New York. Both Defendants reside and work in New Jersey, the police investigation and interviews largely took place in Jersey City, New Jersey, the co-

conspirators (i.e., the Defendants' children) also resided in New Jersey, and the alleged criminal activity of impeding the investigation and interfering with the right of sepulcher occurred in New Jersey.

Plaintiff commenced this action in state court on November 13, 2018, alleging that Defendants interfered with Plaintiff's common law right of sepulcher. "In New York, the common law right of sepulcher is defined as the next of kin's 'absolute right to immediate possession of a decedent's body for preservation and burial.'" *Kijak v. Columbia Presbyterian Hosp.*, No. 11-CV-6076, 2013 WL 5299133, at *8 (S.D.N.Y. Sept. 20, 2013) (citing *Melfi v. Mt. Sinai Hosp.*, 64 A.D.3d 26, 31 (1st Dep't 2009)). Defendant Gemma filed a notice of removal in this case on December 21, 2018, ECF No. 1, and filed a motion to dismiss on December 28, 2018, ECF No. 7. This motion was denied by this Court without prejudice for failure to adhere to the Court's Individual Rules. ECF No. 15. After Defendants Gemma and Dilione were granted leave to file motions to dismiss and filed their respective motions, Plaintiff asked for leave to amend her complaint, ECF No. 36, and the Court granted Plaintiff's request, ECF No. 40. Defendants filed the instant motions to dismiss on June 20, 2019, arguing that Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 46, 50. Plaintiff filed her opposition on July 11, 2019. ECF No. 56. Finally, Defendants filed their replies on July 18, 2019. ECF Nos. 59, 61.

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) (quotation marks omitted). "A prima facie case

[of personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed.Appx. 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir.1998)). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway" and "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). "[T]he pleadings and affidavits [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85.

Determining whether personal jurisdiction exists is a two-step inquiry. "First, we look to the law of the forum state to determine whether personal jurisdiction will lie. If jurisdiction lies, we consider whether the [] exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citations omitted). Under New York's long-arm statute, there are two ways to establish personal jurisdiction over a defendant: (1) "general jurisdiction" under N.Y. CPLR §301; or (2) "specific jurisdiction" under N.Y. CPLR §302. "In New York, general jurisdiction is governed by N.Y. CPLR § 301. Section 301 preserves the common law notion that 'a court may exercise general jurisdiction over a nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 798 (S.D.N.Y. 2015) (quoting *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F.Supp.3d 97, 103 (S.D.N.Y. 2015)). "For an individual, the paradigm forum

for the exercise of general jurisdiction is the individual's domicile . . . ." *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (internal quotation marks omitted). In New York, specific jurisdiction is governed by N.Y. CPLR §302. "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in the state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016). New York's long-arm statute allows for specific jurisdiction over non-domiciliaries "who in person or through an agent . . . (1) transacts business within the state or contracts anywhere to supply goods or services in the state, or (2) commits a tortious act within the state . . . or (3) commits a tortious act without the state causing injury to person or property within the state . . . or (4) owns, uses or possesses any real property situated within the state." N.Y. CPLR § 302.

For the exercise of personal jurisdiction to comport with due process, a court must determine (1) "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant" (the "minimum contacts" inquiry), and (2) "whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice'" (the "reasonableness" inquiry). *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). To determine whether sufficient minimum contacts exist, "[t]he crucial question is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)). Contacts "between the plaintiff (or third parties) and the forum State" do not

suffice, because "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

II. **Fed. R. Civ. P. 12(b)(6)**

When resolving a motion to dismiss under Fed. R. Civ. P 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

**DISCUSSION**

I. **Personal Jurisdiction**

A. **General Jurisdiction**

The Court does not have general personal jurisdiction over either Defendant. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). It is undisputed that Defendants Gemma and Dilione are not domiciled in New York, that they were not served in New York, and that they do not consent to this Court's jurisdiction. *See Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ("For general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction."). Moreover, Plaintiff has not established that Defendants' other contacts with New York render them "at home" in the state or that Defendants are present in New York "with a fair measure of permanence and continuity." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2nd Cir. 1990) (citation omitted). Plaintiff has not alleged that Defendants hold New York State driver's licenses, maintain personal and business checking and credit card accounts in New York banks, file New York State tax returns, list New York as their home address, or maintain a telephone listing or mailing address in New York. *See Reich*, 38 F. Supp. 3d at 456; *see also Weil v. Am. Univ.*, No. 7-CV-7748, 2008 WL 126604 (S.D.N.Y. Jan. 2, 2008).

Plaintiff asserts three connections between Defendants and New York State: (1) Defendant Gemma performs consulting work for one real estate property in Brooklyn; (2) Defendant Gemma provides legal representation to his son in an action in New York; and (3) both Defendants conspired to cover-up the murder which had occurred in New York City. Amended Complaint at 6–9. These are insufficient to establish general personal jurisdiction over the Defendant. First, the

real estate consulting work that Defendant Gemma performs is limited to one project, he has no office or employees in New York, and he does not conduct or solicit any other business in the State. Def. Gemma Memo at 10.[2] Second, although Mr. Gemma provided legal advice to his son, he has not entered an appearance in any action related to his son. Providing legal advice to a client—especially without entering an appearance or any formal representation in the action—is not enough to create general jurisdiction. *See, e.g., Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("Of course, when a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum.") (citation omitted). Third, the conspiracy to hide the body, the police investigation, and all other relevant criminal conduct occurred in New Jersey. Although the murder itself occurred in New York, the Defendants' alleged criminal activity and conspiracy began once they were contacted by their children who were back in Jersey City, New Jersey. Together, this is not enough to establish continuous and systematic contacts such that the Court could exercise general jurisdiction over either of the Defendants.

B. **Specific Jurisdiction**

The Court also does not have specific jurisdiction over the Defendants. New York's long-arm statute allows for specific jurisdiction over non-domiciliaries "who in person or through an

---

[2] Plaintiff "requests the opportunity to engage in jurisdictional based discovery to prove that Gemma is essentially 'at home' in New York." Plaintiff's Omnibus Memorandum of Law in Opposition to Motion to Dismiss (ECF No. 56) ("Pl. Memo") at 19. While there is indeed a factual dispute regarding the extent of Defendant Gemma's real-estate consulting in New York, an evidentiary hearing is unnecessary in this case. Even crediting Plaintiff's contentions about Defendant Gemma's business in New York, his real-estate projects in the State, without more (e.g., without offices, employees, bank accounts), and maintaining his office and home in New Jersey, is not enough to render Mr. Gemma "at home" in New York. Moreover, as discussed below, even if Plaintiff could establish general personal jurisdiction over Defendants, the claims would be dismissed under Rule 12(b)(6). Thus, an evidentiary hearing to resolve factual disputes is unnecessary.

agent . . . (1) transacts business within the state or contracts anywhere to supply goods or services in the state, or (2) commits a tortious act within the state . . . or (3) commits a tortious act without the state causing injury to person or property within the state . . . or (4) owns, uses or possesses any real property situated within the state." N.Y. CPLR § 302. As discussed above, in this case, the police investigations and interrogations occurred in New Jersey; the conversations between the Defendants and their children occurred while all parties were in New Jersey; and any alleged conspiracy to interfere with the right of sepulcher pertained to Mr. Comunale's body, which was buried in New Jersey. Defendants neither committed a tortious act within New York, nor did they commit a tortious act causing injury to person or property within the State. Moreover, this lack of connection to New York also indicates that Defendants lack the requisite minimum contacts with New York to give this Court specific personal jurisdiction. Defendants did not "purposefully avail" themselves of the privilege of conducting activities in New York and did not invoke the benefit and protections of the laws of New York. *See Best Van Lines, Inc.*, 490 F.2d at 242–43.

Plaintiff alleges that Defendant engaged in a conspiracy to cover up the murder that originally took place in New York, thus establishing sufficient connection to New York for specific jurisdiction. To establish personal jurisdiction under a conspiracy theory, a plaintiff must allege that: "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in the state." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). Moreover, Plaintiff must demonstrate that "a co-conspirator's minimum contacts were in furtherance of the conspiracy." *Id.* In this case, the conspiracy to cover up the murder and interfere with the right of sepulcher all occurred after the co-conspirators arrived back in New Jersey. There were no overt acts taken towards the conspiracy

by either the Defendants or their children in New York. Thus, Plaintiff has failed to demonstrate that the alleged conspiracy establishes specific personal jurisdiction over the Defendants in New York.

II. **Choice of Law**[3]

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012). "Under the law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Id* at 433; *see also In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993). Here, it is undisputed that there is a conflict between the substantive law in New York and New Jersey—the common law right of sepulcher exists in New York State but not in New Jersey.[4]

Next, courts in New York apply an "interest analysis" to choice-of-law questions in tort claims. Interest analysis is a fact intensive, "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 337 (2d Cir. 2005) (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)). Under this test, torts are divided into two types—conduct-regulating rules and loss-allocation rules. For conduct-regulating rules, "the law of the jurisdiction

---

[3] Without personal jurisdiction, this case cannot move forward. Out of an abundance of caution, the Court briefly addresses why the case should also be dismissed pursuant to Rule 12(b)(6).
[4] Plaintiff acknowledges that New Jersey does not recognize the right of sepulcher. Nevertheless, Plaintiff notes that there are other rights in New Jersey—such as the quasi-property right to a next-of-kin's remains—that may be similar to the right of sepulcher. Even if this were the case, the right of sepulcher itself is the only cause of action asserted in Plaintiff's Complaint and Amended Complaint. Whether a similar right exists in New Jersey, and whether this right applies to the facts of this case, is beyond the scope of Defendants' motion to dismiss. Moreover, this right would not overcome the lack of personal jurisdiction in this case.

where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) (quoting *Cooney*, 81 N.Y.2d 66 at 72). In this case, New Jersey has the greater interest in regulating the conduct that occurred. Although Mr. Comunale was murdered in New York, the alleged tort in this case centers around the disposal of his body and the conspiracy to conceal and impede the discovery of his body. As discussed above, the Defendants and their alleged co-conspirators reside in New Jersey; the body was disposed of (and remained in) New Jersey for the duration of the conspiracy; and the conversations with detectives and police investigation occurred in New Jersey. Thus, while the Defendants' children were prosecuted in New York State for their role in the murder itself, New Jersey has a greater interest in the alleged tort here—the interference with Plaintiff's right to immediate possession of Mr. Comunale's body for preservation and burial—because the conspiracy and violations of law occurred in New Jersey. Accordingly, New Jersey substantive law applies. Since New Jersey does not recognize the common law right of sepulcher, and since Plaintiff's sole cause of action is based on that right, Plaintiff's complaint must be dismissed for failure to state a claim under Rule 12(b)(6).

## CONCLUSION

This Court cannot exercise personal jurisdiction over the Defendants, and the substantive right of sepulcher does not exist in the state of New Jersey. For the reasons state above, Plaintiff's complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The Clerk of Court is respectfully directed to close this case and the related case, No. 18-CV-12246.

**SO ORDERED.**

Dated:     February 11, 2020
              New York, New York

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**